Nicole Owens
Federal Public Defender
Melissa Winberg
Rilie Fry
Assistant Federal Defender
Federal Defender Services of Idaho
702 West Idaho Street, Suite 1000
Boise, Idaho 83702
(208) 331-5500

Attorneys for Justin Abbott Facey

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
Honorable Matthew M. Scoble

| United States of America | No. 3:25-cr-00033-TMB-MMS |
|---|---|
| Plaintiff | **Motion to Reopen Detention Hearing** |
| v. | |
| Justin Abbott Facey | |
| Defendant | |

## Introduction

Mr. Facey waived his right to a detention hearing when he appeared in court in May 2025 with the understanding that he could reopen the detention hearing once he had a solid release plan. Mr. Facey now has new material information regarding his acceptance into a partial hospitalization program through Banyan Treatment Center. Exhibit A. Based on this new, material information a detention hearing is warranted. 18 U.S.C. § 3142(f). The government does not oppose the request for a detention hearing but will argue for Mr. Facey's detention.

Conditions can reasonably assure Mr. Facey's appearance for future court hearings and address any potential danger to the community. Mr. Facey proposes releasing to a partial hospitalization program at Banyan Treatment Center in Wasilla, Alaska. He has already been accepted into the program. Exhibit A. Banyan provides transportation from the Alaska Correctional Center to the Treatment Center. After Mr. Facey successfully completes the approximately 30-day partial hospitalization program, he will transition to intensive outpatient treatment while still living at Banyan Treatment Center. Once he successfully completes both programs, Mr. Facey proposes that he reside with his parents, Jack and Patricia Facey, in Rutland, Vermont, who are willing to accompany him from Banyan Treatment Center to their home and serve as third-party custodians while he lives with them.

# Release Plan

**A. Mr. Facey will receive substance abuse treatment at Banyan Treatment Center in Wasilla.**

Mr. Facey requests release to Banyan Treatment Center's partial hospitalization program in Wasilla, Alaska. He has already been screened and accepted into the program. Exhibit A. Banyan will provide transportation directly from Alaska Correctional Center to the treatment center in Wasilla. Banyan will follow any court orders including allowing electronic monitoring and will cooperate with pretrial services officers to report any violations of court-ordered conditions.

While not a lockdown facility, Banyan offers treatment, counseling, housing, and community support. Partial hospitalization is a slight step down from inpatient treatment. Mr. Facey will live in a secure sober facility and will not be allowed to freely come and go. Instead, he will leave only to attend treatment in the nearby building used for counseling and support. Any other outings will be sponsored and chaperoned by the facility. The partial hospitalization schedule is seven days a week from 8:45 a.m. until 4:30 p.m. Banyan's partial hospitalization program includes:

- Intensive support without full hospitalization
- Daily structure that reduces chaos and impulsive behavior
- Access to multiple therapies in one place

- Ongoing clinical monitoring to catch problems early and adjust care
- Smoother transitions from detox or residential into outpatient life

Banyan Treatment Centers, Partial Hospitalization Programs for Addiction and Mental Health (Feb. 2025), available at https://www.banyantreatmentcenter.com/levels-of-care/partial-hospitalization-program/. It is recommended "for people who need consistent therapeutic oversight but are stable enough to live at home or in a supportive environment." *Id.*

For Mr. Facey, Banyan Treatment Center expects him to stay in the partial hospitalization program for approximately 30 days. If released, Mr. Facey will be transported by Banyan Treatment Center directly to the Wasilla facility from the Anchorage Correctional Center.

Mr. Facey has applied but is not currently covered by Medicaid or other health insurance. His parents have agreed to privately pay for his partial hospitalization program. After completing the partial hospitalization program, Mr. Facey will remain onsite at Banyan Treatment Center for the duration of the intensive outpatient treatment program.[1]

---

[1] Banyan Treatment Center cannot switch the funding source once a patient is admitted to the program. Thus, if Mr. Facey enters intensive outpatient treatment without Medicaid coverage, he must privately pay for the duration of the program even if Medicaid authorizes coverage partway through the program. Mr. Facey's parents are fully committed to his success and will

Mr. Facey is not only motivated to do well in the program for his own benefit, he also understands the sacrifice his parents are making for him. This level of care is appropriate for Mr. Facey, who has been in custody since May 21, 2025. He does not need to detox and has been participating in the Transformational Living Community at Anchorage Correctional Center. *See* Alaska Correctional Ministries, Transformational Living Community, https://www.godinprison.com/copy-of-who-we-are (last visited March 6, 2026). This faith-based residential program within the jail has helped Mr. Facey focus on making changes in his life.

After successfully completing the partial hospitalization program, Mr. Facey's treatment needs will be reassessed, and he will likely transition to the intensive outpatient treatment program. Banyan Treatment Centers, Intensive Outpatient for Addiction and Mental Health, www.banyantreatmentcenter.com/levels-of-care/intensive-outpatient/ (last visited March 6, 2026). The intensive outpatient program curriculum includes treatment for multiple hours several days a week. *Id.* He will engage in group therapy focused on coping skills, communication, and relapse prevention. *Id.* Mr. Facey will remain on site at Banyan Treatment Center while participating

---

guarantee payment of both the partial hospitalization program and intensive outpatient treatment if Mr. Facey is not approved for Medicaid.

- 5 -
Case 3:25-cr-00033-TMB-MMS   Document 88   Filed 03/06/26   Page 5 of 16

in the intensive outpatient treatment program. This will ensure that he continues to build skills in a safe environment with slightly less structure than the partial hospitalization program.

**B. Once Mr. Facey has successfully completed substance abuse treatment through Banyan Treatment Center, he will move in with his parents in Vermont and continue receiving substance abuse treatment.**

After successful completion of partial hospitalization and intensive outpatient treatment, Mr. Facey will live with his parents, Jack and Patricia Facey, in Rutland, Vermont. They will provide housing and structure as well as love and support for Mr. Facey. They will also accompany Mr. Facey when he travels from Alaska to Vermont.

Jack and Patricia Facey are fully supportive of their son and are invested in his sobriety and success. Jack Facey is an attorney who specializes in real estate law. He is a partner in the law firm Facey Goss & McPhee, where he has practiced for years. FG&M, John A. Facey, III, www.fgmvt.com/john-a-facey.html (last visited March 6, 2026). Patricia Facey is the coordinator for the RSVP Bone Builders Program, which provides classes in weight training and balance exercises to help seniors prevent fractures caused by osteoporosis. AmeriCorps Seniors, RSVP Bone Builders Program, https://www.volunteersinvt.org/service/rsvp-bone-builders-program/ (last visited March 6, 2026). They are upstanding, longstanding members of the

Rutland community and have no criminal history. Mr. Facey is the oldest of their three sons and the family maintains close relationships and consistently gathers for holidays.

The Faceys will provide a safe and supportive home for Mr. Facey to continue his rehabilitation. Mr. Facey grew up in Rutland, Vermont, and lived there until he graduated from Mount St. Joseph Academy when he moved to Worcester, Massachusetts, to work for a newspaper. Thus, through his parents and his childhood in Rutland, Mr. Facey has strong ties to the community.

This release plan will also enable Mr. Facey to more easily access counsel and meet to review discovery and discuss the case with him. Because Mr. Facey is currently detained in Alaska Correctional Center, undersigned counsel are located in Idaho, and the protective order prevents Mr. Facey from possessing his discovery, his release from custody would facilitate his representation. Mr. Facey would be able to more frequently meet with counsel via videoconferencing to review and discuss the facts of his case and any defenses.

### Argument

Mr. Facey's detention hearing should be re-opened and he should be released to Banyon Treatment Center's partial hospitalization program followed by continued substance abuse treatment and release to his parents' home in Rutland, Vermont.

I. **Mr. Facey's acceptance into the Banyan Treatment Center's partial hospitalization program is new and material information that justifies a detention hearing.**

The Court has authority to reopen a detention hearing where newly discovered evidence is brought to its attention. 18 U.S.C. § 3142(f). This includes information "not known to the movant at the time of the hearing" that "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.*

The proposed release plan including Mr. Facey's acceptance into the partial hospitalization program at Banyan Treatment Center is new information that was not known at the time of his prior hearing in May 2025. Since being appointed in early December 2025, undersigned counsel has diligently worked on a release plan for Mr. Facey, including investigating treatment options. Mr. Facey was only recently evaluated and accepted into Banyan Treatment Center. Thus, this information was unknown in May 2025.

The release plan for partial hospitalization at Banyan Treatment Center is also material to the question of whether conditions of release will reasonably assure his appearance in court and the safety of any other person and the community because it provides treatment for substance abuse as well as a structured and controlled environment. If the Court were to order successful completion of the partial hospitalization program as a condition of Mr. Facey's

release, it would ensure he obtained skills to maintain his sobriety in the community. The treatment program also provides Mr. Facey with a supportive sober living facility where he will be able to focus on recovery. Although much less restrictive than incarceration, Mr. Facey will be under supervision while he lives at Banyan Treatment Center and will be unable to leave the facility while he is in the partial hospitalization program.

## II. Incarceration is not the purpose of the Bail Reform Act—the purpose of the statute is to encourage release.

Pretrial detention is to be used sparingly. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Because of this, the Ninth Circuit has cautioned that release should be denied only in "rare circumstances" and that any "doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 1119, 1121 (9th Cir. 1991). Indeed, "the right to bail should be denied only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).

These background principles inform how courts read the Bail Reform Act. The Bail Reform Act embodies a set of strong presumptions in favor of pretrial release and carves out limited circumstances where the court may

order a person locked in a cage.[2] Under the Bail Reform Act, the government must establish one of two things to detain a person accused of an offense enumerated in § 3142(f): (1) the defendant will probably flee if he is released, or (2) the evidence *clearly and convincingly shows* that, if released, the defendant will endanger the community. *Gebro*, 948 F.2d at 1121.

In light of the law's requirement that detention be reserved only for "rare circumstances," these are extremely "heavy burden[s]." *Motamedi*, 767 F.2d 1408 (The government faces "the *heavy burden* of clear and convincing evidence" in showing that a defendant is a "danger to an individual or to the community."). To carry these burdens, the government must show not only that a risk of danger or flight exists, but also that no possible conditions of release could ameliorate those risks. *See* 18 U.S.C. §§ 3142(c), (e). In evaluating whether sufficient conditions of release exist, moreover, a court may not

---

[2] Counsel assumes Mr. Facey has rebutted the presumption of detention by proffering evidence of lack-of-flight and non-dangerousness. The rebuttable presumption of detention presents a low bar for a defendant to overcome. While "the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *see also United States v. Ward*, 63 F. Supp. 1203, 1209 (C.D. Cal. 1999) ("[T]he rebuttable presumption of the BRA places only a burden of production on defendant and requires the government to rebut it."). And this burden of production is "not heavy." *United States v. Bustamante-Conchas*, 557 F. App'x 803, 806 (10th Cir. 2014). Instead, it requires only that the defendant produce "some evidence" that he is not a flight risk or danger to the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). In this case, Mr. Facey has strong ties to both Alaska, where he has lived and worked for decades, and Vermont, where he was raised and his parents still live. In addition, Mr. Facey has no recent criminal history. If counsel is incorrect, then Mr. Facey would like to address the presumption at his hearing.

require that they provide an "ironclad guarantee" that the defendant will appear in court and not commit new crimes. *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) ("Section 3142 does not seek ironclad guarantees[.]"); *United States v. Hoover*, 2014 WL 2094201, at *11 (D. Ariz. May 20, 2014) (same). Instead, a court must release a defendant on the least restrictive conditions of release necessary to "reasonably assure" the defendant's appearance and community safety. 18 U.S.C. § 3142(c).

A person cannot be detained simply because he faces extremely serious charges and the prospect of a lengthy prison term. Courts "require[] more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight." *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

The government cannot rely on the weight of the evidence of a defendant's *guilt* in seeking his detention. Instead, the Court may consider the evidence of guilt "*only* in terms of the likelihood that the person will fail to appear or will pose a danger," not as an impermissible "preliminary determination of guilt" which would impermissibly transform pretrial detention into "a matter of punishment." *Motamedi*, 767 F.2d at 1408.

And the government cannot simply rely on "speculation" that the defendant poses a risk of flight or danger to the community. *United States v. Kaplowitz*, 2014 WL 2155231, at *5 (S.D. Fla. May 22, 2014). Instead, the

government must point to "concrete evidence" proving that the defendant will continue to pose a flight-risk or community danger even if released on strict conditions. *United States v. Cruz*, 363 F. Supp. 2d 40, 47 (D.P.R. 2005).

### III. Mr. Facey does not present a risk of non-appearance or a danger to the community that cannot be addressed with conditions of release.

#### a. Mr. Facey will appear for court.

Within the framework of the Bail Reform Act, Mr. Facey does not present a risk of non-appearance. A failure to appear is not synonymous with flight—while the government may argue that Mr. Facey missed court hearings and deadlines as part of his now-defunct legal practice, his life was apparently spiraling out of control due to drug use in the years leading up to the suspension of his law license.

Mr. Facey will not flee Alaska or Vermont. He was well aware of the charges being brought against other individuals in the broader Heraclio Sanchez-Rodriguez conspiracy prior to his arrest on May 21, 2025, and returned to Alaska even after overseas trips. By January 2024, the government had announced charges against 54 people involved in the conspiracy. Drug Enforcement Administration, Organized Drug Crime Ring Attempted to Flood Alaskan Villages with Fentanyl, 54 Indicted (Jan. 25, 2024), https://www.dea.gov/press-releases/2024/01/25/organized-drug-crime-ring-attempted-flood-alaskan-villages-fentanyl-54. Mr. Facey was present when his

home was searched pursuant to a search warrant on April 30, 2025. Yet he did not leave Alaska and was arrested at his home approximately a month later.

Mr. Facey has extensive ties in Alaska, which is where he has lived and worked since approximately 2016. He was steadily employed as a lawyer until his suspension in February 2025, first as an attorney for the Tlingit and Haida tribes and ultimately as a solo practitioner.

Mr. Facey is invested in obtaining substance abuse treatment for the first time in his life. The amended pretrial services report confirms a lengthy history of substance use as well as a desire for treatment. ECF No. 12. Mr. Facey has done his best to access treatment while in custody and is participating in the Transformational Living Community.

After completing treatment at the Banyan Treatment Center, Mr. Facey will return to Vermont to live with his parents. This again is a location where he has strong ties. Mr. Facey maintains a close relationship with his parents, who raised him and his two younger brothers in Rutland, Vermont. They are invested in his success and will ensure he stays on the right path.

Available conditions of release will reasonably assure Mr. Facey's appearance in court. Specifically, the Court can address Mr. Facey's history of substance use by (1) including attending Banyan Treatment Center's partial hospitalization program as a condition of release, (2) drug testing, and (3) continued drug treatment. The Court can order Mr. Facey to surrender his

passport and not apply for a new passport or travel document. The Court can order Mr. Facey to remain in the state of Alaska until he is permitted to live with his parents in Vermont, and then to travel with them, and to remain in Vermont except as pre-approved by his probation officer. The Court can also require Mr. Facey's parents to serve as third-party custodians while he is living in Vermont.[3] Finally, the Court can order electronic location monitoring, which will be accommodated at Banyan Treatment Center and upon Mr. Facey's completion of the program. These conditions will reasonably assure Mr. Facey's appearance in court as required.

### b. Mr. Facey is not a danger.

Mr. Facey's potential danger is from the instant offense and his history of substance use. His only criminal history is limited, dated, and appears to involve no convictions. Amended Pretrial Services Report, ECF No. 12. Regarding the offense, the courts have made clear that the nature and circumstances of the offense should receive little weight. *Friedman*, 837 F.2d at 49. Regarding his substance use history, these concerns can be mitigated with conditions, as previously noted. Treatment, testing, and check-ins are all

---

[3] Undersigned counsel has discussed the obligations of being a third-party custodian with Mr. Facey's parents. They are willing to take on the responsibility and will report any violations to his probation officer even if it might mean that his release could be revoked.

limitations designed to ensure law-abiding compliance with supervision. The above conditions of release similarly provide for the safety of any other person and the community.

## Conclusion

Mr. Facey should be released because the government cannot show by a preponderance of the evidence that he presents a risk of non-appearance and cannot show by clear and convincing evidence that he presents a danger to the community. Conditions of release, including the partial hospitalization program and follow-up testing and treatment, can mitigate any relevant concerns. Mr. Facey should be released to Banyan Treatment Center's partial hospitalization program followed by intensive outpatient treatment and a move back to Vermont to live with his parents.

Dated: March 6, 2026   Nicole Owens
Federal Public Defender
By:

<u>/s/ Melissa Winberg</u>
Melissa Winberg
Rilie Fry
Assistant Federal Defender
Federal Defender Services of Idaho
Attorneys for Justin Abbott Facey

**Certificate of Service**

I certify that I am an employee of the Federal Defender Services of Idaho, and that a copy of this document, including any attachments, was electronically served on the party or parties below.

    Adam Alexander, Assistant U.S. Attorney
    Jennifer Lowe Ivers, Assistant U.S. Attorney
    Cassidy Edwards, U.S. Probation Officer

Dated: March 6, 2026           /s/ Joy Fish
                                             Joy Fish